UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-425-H

DOUGLAS P. SUMNER                                                      PLAINTIFF

v.

ARMSTRONG COAL COMPANY, INC.                                     DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This action involves a contract dispute between Plaintiff, Douglas P. Sumner ("Sumner"),

and Defendant, Armstrong Coal Company, Inc. ("Armstrong Coal").  Sumner contracted with

Armstrong Coal to assist the company in negotiating coal sales agreements with Louisville Gas

& Electric Corporation ("LG&E") and Big Rivers Electric Corporation.  Sumner filed suit to

recover commissions owed to him on three contracts Armstrong Coal executed with LG&E.

Defendant responded with a counterclaim for fraudulent inducement, unjust enrichment, and a

breach of fiduciary duty.  The Court dismissed the counterclaims in a previous Memorandum

Opinion and Order.  Now the Court considers Plaintiff's partial motion for summary judgment as

to Armstrong Coal's contractual liability on each of the three contracts.

I.

The Court will briefly summarize the relevant facts to Plaintiff's motion and incorporates

the factual background set out in its last order.  Armstrong Coal was formed to develop coal

reserves and sell coal to end users.  However, its corporate executives apparently had limited

contacts with these end users and no track record of contractual compliance.  To remedy this

perceived obstacle to obtaining business, they turned to Sumner.  On November 12, 2006, it

entered into a letter agreement that gave Sumner "the exclusive right to negotiate a contract with LG&E" on behalf of Armstrong Coal and promised payment of thirty-five cents per ton of coal sold to LG&E for any contract entered into prior to December 31, 2007.  But that letter agreement no longer defines their relationship.

On August 7, 2007, Armstrong Coal and Sumner executed a eleven (11) page contract (the "Consulting Agreement"), formalizing a broader relationship.  The Consulting Agreement provided for the same rate of compensation under similar circumstances, but extended the term to December 31, 2009.  It also gave Sumner the right to negotiate contracts with Big Rivers Electric Corporation.  The parties amended the Consulting Agreement on February 3, 2009 to clarify that Sumner would not be entitled to compensation for coal shipped on any purchase order, sold on the spot market, or shipped after 2009, unless pursuant to a sales contract exceeding one year.

In December 2007, Sumner accomplished the precise overall objective which Armstrong Coal had sought.  He negotiated an LG&E coal supply contract ("Contract No. J07032"), which Armstrong Coal executed for the sale of 27.1 million tons of coal through 2015.[1]  The Consulting Agreement provides that Armstrong Coal has the final say on whether to sign an agreement with LG&E.  After executing this first contract, Armstrong Coal apparently ceased to involve Sumner, or any other outside consultant, in its negotiations with LG&E.  On November 20, 2008, Armstrong Coal and LG&E amended Contract No. J07032 in several respects, including adjusting the amount of coal to be provided in the years 2008 to 2012, but maintaining the total volume of 27.1 million tons through 2015.  Around this time and pursuant to the terms of the

---

[1] The copy of this contract Plaintiff provided as Exhibit 3 to his motion of summary judgment appears to be missing its fourth page, which would presumably indicate that LG&E was to purchase four million tons of coal per year in 2013, 2014, and 2015, bringing the total for the entire contract to 27.1 million tons.  Defendant does not dispute this term.

Consulting Agreement, Armstrong Coal began paying Sumner compensation based on sales under Contract No. J07032.

Thirteen months later, Armstrong Coal and LG&E signed two additional contracts: Contract No. J10007 created a purchase order for 600,000 tons of coal for the term January 1, 2010 through December 31, 2010; and Contract No. J10009 provided for the sale of 6 million tons of coal from 2011 to 2016, contingent on Armstrong Coal receiving certain permits for specific mines. The same day Armstrong Coal and LG&E amended Contract No. J07032 a second time, reducing the total volume from 27.1 million tons to 16 million tons.

In May 2011, Sumner notified Armstrong Coal of alleged delinquent commission payments owed to him on Contracts No. J10007 and J10009. Armstrong Coal refused payment. After Sumner filed this lawsuit, Armstrong Coal stopped paying his commission on Contract No. J07032.

## II.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment bears the initial burden "to demonstrate that an essential element of the nonmoving party's case is lacking." *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The burden then shifts to the non-moving party to show a genuine dispute exists as to that element, defeating the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

3

Sumner seeks a judgment from this Court that, pursuant to the Consulting Agreement, Armstrong Coal owes him commission payments on coal sales under each of the three LG&E contracts outlined above.  The Consulting Agreement's applicability to each contract requires individual analysis.

III.

There is no doubt that Sumner is entitled to commissions on coal sold under Contract No. J07032.  The purpose of the Consulting Agreement was to help Armstrong Coal obtain coal contracts.  Sumner helped to achieve precisely that objective.  In return, the Consulting Agreement provides that Sumner receive compensation for "all LG&E and Big Rivers Contracts executed by Armstrong during the Term."  Its "Term" extended from November 12, 2006 to December 31, 2009.  Armstrong Coal signed Contract No. J07032 in December 2007 and both subsequent amendments occurred before the Term expired.  Consistent with the clear terms of the Consulting Agreement, Armstrong Coal paid Sumner commissions as it received payments from LG&E for coal it shipped on this contract.  It stopped these payments only when Sumner filed suit to recover payments on the other two LG&E contracts.

Armstrong Coal makes three arguments to negate its responsibility.  First, it argues that Sumner procured the Consulting Agreement by fraud.  If true, this would allow its recision and would void Sumner's right to commissions on any LG&E contracts.  However, Armstrong Coal has not pled this affirmative defense with the particularity that Fed. R. Civ. P. 9(b) requires.  *See Holley Performance Prods., Inc. v. Quick Fuel Tech., Inc.*, No. 1:07-CV-185-JHM, 2011 WL 3159177, at *3 (W.D.Ky. July 26, 2011) (requiring fraud-based affirmative defense to meet Rule 9(b)'s pleading standard); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice*

4

*and Procedure* § 1274 (3d ed. 2004) (affirmative defenses may be pleaded in general terms, except for those falling within Rule 9, including fraud).  This Court has already carefully considered this claim in a previous Memorandum Opinion and Order, finding that Armstrong Coal has not alleged fraud with sufficient particularity.  Nothing has changed about Defendant's assertions of fraud.  Armstrong Coal has not articulated particular facts that could amount to fraudulent inducement.  Consequently, these allegations do not preclude summary judgment.

Second, Defendant argues that Sumner breached his fiduciary duties in the course of negotiating the contract.  The Court likewise rejected this argument as a matter of law in its prior order because the facts alleged – that Sumner negotiated a contract to sell as much coal to LG&E as possible because it maximized his commission – could not support a claim of breach of fiduciary duties.  Armstrong Coal, not Sumner, signed Contract No. J07032.  If it had not been in Armstrong Coal's self-interest to do so, it could have sought adjustments; it could have declined to execute the contract.  It did none of these things.

Armstrong Coal's final argument is that it never intended to pay Sumner millions of dollars for "a few dozen hours of work."  However, where the terms of a contract are unambiguous, as they are here, one party's supposed intentions are irrelevant.  *See Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W. 3d 381, 385 (Ky. Ct. App. 2002) ("Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument") (citing *Hoheimer v. Hoheimer*, 30 S.W. 3d 176, 178 (Ky. 2000)).  More devastating to this argument, Sumner's future compensation was never a secret.  It was obvious to anyone who could multiply and add.  The Consulting Agreement tied Sumner's compensation to the amount of coal Armstrong Coal sold to LG&E, not the amount of time Sumner required to

5

achieve that result.  Defendant may now be unhappy with the bargain it struck, but retrospective regret in contractual matters is neither uncommon nor a basis to relieve a party of its clear contractual obligations.

IV.

Contract No. J10009 is not quite so straightforward, but the result is ultimately the same. Armstrong Coal offers two arguments for why it bears no responsibility for the commissions on this contract.

First, it contends that the Consulting Agreement only requires commissions on contracts Sumner negotiated and neither party disputes that Sumner had no involvement with Contract No. J10009.[2]  Defendant points to Section B of the Consulting Agreement's recitals:

> "Armstrong granted Sumner exclusive sale agreement rights for the negotiation by Sumner, on behalf of Armstrong, of contracts for the sale of coal to Louisville Gas and Electric Corporation, its Subsidiaries and Affiliates ("LG&E") and Big Rivers Electric Corporation ("Big Rivers"), including any amendments or extensions thereof (collectively, the "LG&E and Big Rivers Contracts")."

Defendant argues this language defines "LG&E and Big Rivers Contracts" as only those contracts actually negotiated by Sumner.  However, the sentence immediately following the language states that: "[F]or purposes of this Agreement, the term LG&E and Big Rivers Contracts shall include any and all contracts executed by Armstrong during the Term (as defined in Section 2 below)."  Thus, where the Agreement provides that "Armstrong shall pay Sumner. . . under all LG&E and Big Rivers Contracts executed by Armstrong during the Term," the unambiguous meaning is that Armstrong must pay a commission whether or not Sumner

---

[2] Defendant asserts this argument for denying a commission on Contract No. J10007 as well.  The argument fails as to that contract for the same reasons discussed here – the Consulting Agreement provides for compensation on all LG&E contracts executed during the Term, not just contracts Sumner negotiated.

6

negotiated a particular contract.

Defendant's second argument is that the contract was actually executed after the Consulting Agreement had expired.  Though Armstrong Coal and LG&E signed the contract prior to December 31, 2009, Defendant argues that no contract existed until a condition precedent was met.  *See Green River Steel Corp. v. Globe Erection Co.*, 294 S.W. 2d 507, 509 (Ky. 1956) (approving a Restatement rule that a contract forms when the last act necessary for its formation occurs).  Section Two of Contract No. J10009 does provide that Armstrong Coal's receiving particular mining permits "shall be a condition precedent . . . to the enforceability of this Agreement" and that "this Agreement shall be deemed null and void and unenforceable ab initio" if the condition precedent is not met.  Thus, Defendant argues, Contract No. J10009 was not a contract, as a matter of law, until the mining permits issued in 2010.

Defendant's argument fails because the clear import of the Consulting Agreement was to provide Sumner compensation based on agreements reached between Armstrong Coal and LG&E from 2006 to 2009.  As to Contract No. J10009, the two companies executed an agreement on December 22, 2009 for the sale of specific amounts of coal.  Though that agreement became enforceable at a later date, the entire scope of the contractual relationship was defined and executed on December 22, 2009.  The instrument they signed that day did not merely indicate an intent to contract at a later date, but rather was itself the entire contract.  Thus, it met the definitional requirements set forth in the Consulting Agreement.

Sumner's right to a commission on Contract No. J10009 must rise and fall with its contingencies: if Armstrong Coal received the permits, then LG&E was contractually bound to purchase the coal and Sumner earns his commission when and if Armstrong Coal delivers and

7

receives payment; if no permit issued, then Armstrong Coal would have no obligation to provide coal to LG&E and Sumner would receive no commission.

V.

Finally, Defendant argues that it owes Plaintiff no commissions on Contract No. J10007 because it was a short-term purchase order for the year 2010.  The first amendment to the Consulting Agreement clarified that Sumner is not entitled to compensation for "coal shipped after the Initial Term pursuant to any purchase order."  He was only eligible for payments on coal shipped after the Consulting Agreement's term expired if the shipments were pursuant to a contract that exceeded one year.  Thus, Contract No. J10007 falls outside the scope of the plain language of the Consulting Agreement's compensation provision.

Sumner does not dispute that Contract No. J10007 was a short-term purchase order. Nevertheless, he claims Armstrong Coal breached its implied duty of good faith and fair dealing by "shifting" 600,000 tons of coal from the long-term Contract No. J07032 to the short-term Contract No. J10007.  He notes that Armstrong Coal significantly reduced the volume of coal to be sold under Contract No. J07032 the same day it executed Contracts No. J10007 and J10009. However, this fact alone cannot support an entry of summary judgment, especially in light of facts to the contrary.  For example, the sale price in Contract No. J10007 was much higher than any of the prices reflected in Contract No. J07032, consistent with a finding that the purchase order was an independent, short-term sale, not a mere shift from the existing long-term contract. Plaintiff has not met his burden of showing Armstrong Coal's liability on Contract No. J10007 as a matter of law.

VI.

8

For all of the reasons stated under these circumstances, the Court concludes that the amendment of Contract No. J07032 in December 2009 did not violate any provisions of the Consulting Agreement.  Therefore, Sumner is entitled to commissions of coal sold by Armstrong Coal to LG&E pursuant to Contract No. J07032 as amended and pursuant to Contract No. J10009.  Having denied Sumner's motion for summary judgment under Contract No. J10007, the Court has, in effect dismissed those claims.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for partial summary judgment is SUSTAINED in part and DENIED in part; Armstrong Coal is liable to compensate Sumner at the rate provided in the Consulting Agreement for all coal sold under Contract No. J07032, as amended, and Contract No. J10009.

IT IS FURTHER ORDERED that Sumner's claim for compensation under Contract No. J10007 is DISMISSED.

cc:      Counsel of Record